ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| WILSON VARGAS RODRÍGUEZ, LIDIA INÉS COLLADO PINTO Y JOSÉ VARGAS COLLADO<br><br>Parte Recurrente<br><br>V.<br><br>OFICINA DE GERENCIA DE PERMISOS (OGPe) DEL DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO<br><br>Parte Recurrida<br><br>J. AVILÉS MEMORIAL, LLC<br><br>Proponente | TA2025RA00254 | Revisión Judicial procedente de la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio<br><br>Caso Número: 2025-628076-SDR-302411<br><br>Sobre: Solicitud de Revisión de Decisión Administrativa |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Salgado Schwarz y la Juez Aldebol Mora.

Salgado Schwarz, Carlos G., Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico a 31 de octubre de 2025

Comparece el señor Wilson Vargas Rodríguez, Lidia Inés Collado Pinto y José Vargas Collado ("Recurrentes") y solicitan que revisemos la Resolución emitida el 14 de agosto de 2025[1] por la Oficina de Gerencia de Permisos del Departamento de Desarrollo Económico y Comercio ("OGPe" o "Agencia").

Por los fundamentos que exponemos a continuación, *revocamos* y *devolvemos* el caso para la celebración de la correspondiente vista pública.

---

[1] Notificada el 26 de agosto de 2025.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe.

El 27 de julio de 2024, los Recurrentes presentaron una *Querella*[2] ante la Junta de Planificación de Puerto Rico[3]. En esa ocasión, los Recurrentes alegaron que la funeraria operaba sin el permiso requerido y en incumplimiento con las condiciones establecidas en el permiso emitido para su operación.[4] El 7 de noviembre de 2024, el Agente Obdulio Reyes ("Agente") realizó una inspección ocular de la propiedad en cuestión. Posteriormente, el 2 de diciembre de 2024, el Agente emitió un *Informe de Investigación*[5]. Mediante dicho informe, el Agente señaló que en una primera visita le concedió al señor Jaime Avilés Ramírez ("Proponente") tiempo adicional para tramitar ciertos documentos que eran necesarios en el trámite relacionado al Permiso Único 2021, sin embargo, el proceso no se finalizó.[6] Por lo tanto, como parte de los hallazgos de la investigación, el Agente indicó que hubo "*[i]ncumplimiento a las condiciones del Permiso Único 2021-366972-PU-152698 este fue archivado en el sistema SBP*."[7] Así las cosas, el 30 de enero de 2025, la Junta de Planificación ("Junta") emitió una *Notificación de Hallazgo(s) y Orden de Mostrar Causa*[8] y concluyó que Avilés Memorial violentó las disposiciones

---

[2] Querella Núm: 2024-SRQ-302981.
[3] Véase Entrada #1 del expediente de Primera Instancia en el *Sistema Unificado de Manejo y Administración de Casos* (SUMAC), págs. 33-50.
[4] Véase recurso de revisión administrativa, pág. 6.
[5] Véase Entrada #1 del expediente de Primera Instancia en SUMAC, págs. 33-50.
[6] *Íd.*, pág. 34.
[7] *Íd.*, pág. 35.
[8] *Íd.*, págs. 51-56.

del Artículo 9.12, *Permisos y suministro de servicios básicos*, de la *Ley para la Reforma del Proceso de Permisos de Puerto Rico*[9] y las Secciones 1.6.7, *Permisos y Certificaciones* y 3.7.1, *Permiso Único*, del *Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios* ("Reglamento Conjunto"). A tales efectos, le ordenó al Proponente mostrar causa por la cual la Junta no debía imponerle las siguientes sanciones: a). Multa por la cantidad de $750.00 por incurrir en las violaciones señaladas; b). Emitir una orden de cese y desista bajo el artículo 14.5 de la Ley Núm. 161-2009; c). Acudir al Tribunal de Primera Instancia en solicitud de una Orden Judicial para ordenar la demolición de las obras ilegalmente construidas a costa del Proponente y/o del uso no permitido y el cobro de la multa impuesta o emitida por la Junta; d). Ordenar la imposición de honorarios y costas de abogados según lo dispuesto en la Regla 44 de Procedimiento Civil, según enmendada.[10]

Según alegan los Recurrentes, el 10 de febrero de 2025, el Proponente presentó una nueva solicitud de Permiso Único bajo el caso número 2025-617338-PU-388697[11]. Como consecuencia de lo anterior, los Recurrentes presentaron una *Solicitud de Intervención y Oposición a Solicitud de Permiso Único*[12]. Entre sus alegaciones plantearon que como colindantes de la propiedad en controversia, se ven afectados por los

---

[9] Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, también conocida como *Ley para la Reforma del Proceso de Permisos de Puerto Rico*.
[10] Véase Entrada #1 del expediente de Primera Instancia en SUMAC, págs. 53-54.
[11] *Íd.*, pág. 57.
[12] *Íd.*, págs. 57-62.

incumplimientos en las operaciones del negocio. El 20 de marzo de 2025, la OGPe presentó una *Resolución sobre Solicitud de Intervención* declarando *Ha Lugar* la solicitud. El 27 de marzo de 2025, la OGPe emitió el Permiso Único 2025-617338-PU-388697 a favor de J. Avilés Memorial con fecha de expiración de 28 de marzo de 2028.[13] Inconformes con la aprobación del Permiso Único 2025, el 16 de abril de 2025, los Recurrentes presentaron una *Solicitud de Revisión Administrativa*[14]. Entre los planteamientos que hicieron los Recurrentes, alegaron que la OGPe no estaba autorizada a renovar el permiso, toda vez que el Proponente incurrió en una serie de incumplimientos que impedían la aprobación del Permiso Único del 2025. Además, señalaron que una nueva solicitud de Permiso Único requiere que se evalúe nuevamente la operación propuesta y, según alegan, eso no ocurrió en este caso. Finalmente, alegaron que no les garantizaron el debido proceso de ley que corresponde a eventos como este, en la medida en que la OGPe autorizó el Permiso Único una semana después de haber autorizado la intervención de los Recurrentes y no tuvieron la oportunidad de ser oídos, de contrainterrogar testigos y de examinar la prueba sobre la cual se basó la decisión. Mediante *Orden* dictada el 3 de junio de 2025, la OGPe pautó una vista de Revisión Administrativa para el 24 de junio de 2025.[15] Durante la vista, los Recurrentes plantearon cuestiones de legitimación activa respecto a la solicitud y concesión del Permiso Único. Además, alegaron que existe una

---

[13] *Íd.*, págs. 71-78.
[14] Véase Entrada #1 del expediente de Primera Instancia en SUMAC, págs. 1-15.
[15] Véase Entrada #2 del expediente de Primera Instancia en SUMAC, pág. 2.

discrepancia en el área de construcción autorizada entre el permiso anterior y el nuevo.[16] Por su parte, la OGPe señaló que la revisión administrativa versa sobre "*un permiso único y no trata de una consulta, construcción o permiso de construcción consolidado*"[17]. Además, indicó que a la OGPe no le corresponde hacer una inspección del permiso, sino que, una vez otorgado se presume válido y cualquier asunto sobre incumplimiento recae bajo la jurisdicción de la Junta[18].

El 16 de julio de 2025, la Oficial Examinadora emitió el *Informe de Vista Administrativa*[19] y recomendó declarar "[…] *Ha Lugar la solicitud de revisión administrativa núm. 2025-620766-SDR-302184 en cuanto al requisito de legitimación activa. Ante ello, se recomienda la devolución del caso número 2025-6177338-PU-388697 a la OGPe para su evaluación en cumplimiento con lo requerido por la Ley 161-2009 y el Reglamento Conjunto 2023 sobre Permiso Único.*"[20] Finalmente, el 14 de agosto de 2025[21], la OGPe emitió una *Resolución de Revisión Administrativa*[22]. En esa ocasión, la Agencia incluyó un extracto del Memorial Explicativo presentado por el Proponente, en el que este indicó lo siguiente:

> Este escrito se somete para solicitar un nuevo permiso ya que el existente se archivo [sic] por no subir las pruebas da [sic] tiempo de las correcciones de bomberos y salud. A los efectos de asegurar cumplimiento se contrató los servicios de JSB & Associates, PSC para asegurar el presente y futuro cumplimiento con todos los

---

[16] *Íd.*, pág. 3.
[17] *Íd.*, pág. 4.
[18] *Íd.*
[19] Véase Entrada #3 del expediente de Primera Instancia en SUMAC.
[20] *Íd.*, pág. 9.
[21] Notificada el 26 de agosto de 2025.
[22] Véase Entrada #2 del expediente de Primera Instancia en SUMAC, págs. 2-11.

requerimientos de OGP [sic] y el Permiso Único…[23]

Finalmente, la OGPe señaló que se trata de una "[…]*solicitud de renovación, presentada dentro del término dispuesto en el Reglamento Conjunto y que no implica variación a los usos previamente aprobados y vigentes al momento de la radicación de la solicitud.*" Por tal razón, la Agencia concluyó que no es un asunto revisable ante dicho foro, por tratarse de la renovación de un permiso vigente para el cual no se solicitó uso adicional.[24]

Inconforme, el 25 de septiembre de 2025, los Recurrentes acudieron ante nos mediante recurso de revisión administrativa e hicieron los siguientes señalamientos de error:

**ERRÓ EL DRA EN LA EVALUACIÓN DE LOS DOCUMENTOS DEL EXPEDIENTE ADMINISTRATIVO AL DETERMINAR QUE EL PERMISO ÚNICO 2021 FUE RENOVADO Y QUE POR LO TANTO EL TRÁMITE DE LA SOLICITUD DEL PERMISO ÚNICO 2025 FUE UNA RENOVACION Y NO UNA NUEVA SOLICITUD DE PERMISO, LO CUAL ES UNA DETERMINACION CONTRARIA A LOS DOCUMENTOS QUE OBRAN EN EL EXPEDIENTE ADMINISTRATIVO QUE DEMUESTRAN, SIN LUGAR A DUDAS, QUE DICHO PERMISO FUE ARCHIVADO POR INCUMPLIMIENTO CON LOS REQUISITOS NECESARIOS PARA SU RENOVACIÓN.**

**ERRÓ EL DRA AL SOSTENER LA VALIDEZ DEL PERMISO ÚNICO 2025, PORQUE DEL EXPEDIENTE ADMINISTRATIVO Y DEL TESTIMONIO VERTIDO EN LA VISTA Y ACOGIDO COMO UN HECHO, NO CONTROVERTIDO, EN EL [SIC] RESOLUCIÓN DEL DRA SURGE QUE EL PROPONENTE INCUMPLIÓ CON LOS REQUISITOS DE LEGITIMACIÓN ACTIVA PARA LA PRESENTACIÓN DE LA SOLICITUD DEL PERMISO ÚNICO.**

**ERRÓ LA DRA AL SOSTENER LA APROBACIÓN DEL PERMISO ÚNICO DEL 2025, A PESAR DE QUE EL DEL EXPEDIENTE ADMINISTRATIVO SURGE QUE EL PROPONENTE AMPLIÓ EL ÁREA DE CONSTRUCCIÓN POR 750 PIES CUADRADOS SIN ANTES HABER SOLICITADO Y OBTENIDO EL CORRESPONDIENTE PERMISO DE CONSTRUCCIÓN, LO QUE CONSTITUYE**

---

[23] *Íd.*, pág. 3.
[24] *Íd.*, pág. 10.

**UNA VIOLACIÓN A LA LEY DE PERMISOS, AL REGLAMENTO CONJUNTO Y A LAS CONDICIONES DEL PERMISO ÚNICO EMITIDO PARA LA OPERACIÓN DE LA FUNERARIA QUE EXPRESAMENTE PROHÍBE AMPLIAR LA PROPIEDAD.**

**ERRÓ LA DRA AL SOSTENER LA VALIDEZ DEL PERMISO ÚNICO 2025, EN CUYO PROCESO DE EVALUACIÓN SE LES COARTÓ A LOS RECURRENTES SU DERECHO A UN DEBIDO PROCESO DE LEY AL NO HABÉRSELE DADO LA OPORTUNIDAD REAL DE SER OÍDOS A CONTRAINTERROGAR TESTIGOS, A EXAMINAR LA PRUEBA Y QUE LA DECISIÓN ESTÉ BASADA EN EL EXPEDIENTE ADMINISTRATIVO.**

**ERRÓ LA DRA AL SOSTENER LA DETERMINACIÓN DE LA OGPE APROBANDO EL PERMISO ÚNICO 2025 A PESAR DE QUE LA PRESENTACIÓN DE UNA NUEVA SOLICITUD DE PERMISO ÚNICO REQUIERE QUE SE EVALÚE NUEVAMENTE AL PROPONENTE Y QUE SE CONFIRME EL CUMPLIMIENTO DE LA OPERACIÓN PROPUESTA CON LOS REQUISITOS ESPECÍFICOS APLICABLES A ESTA OPERACIÓN; DEL EXPEDIENTE ADMINISTRATIVO NO SURGE QUE LA OGPE HAYA REALIZADO TAL EVALUACIÓN. LA DRA NO DEBIÓ AVALAR LA DETERMINACION DE LA OGPE POR ESTA APROBAR EL PERMISO SIN CONSIDERAR EL HISTORIAL DE INCUMPLIMIENTOS DEL PROPONENTE CON LAS CONDICIONES ESTABLECIDAS EN EL PERMISO ÚNICO QUE LE FUE PREVIAMENTE EMITIDO.**

-II-

## A. Deferencia administrativa

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*[25] ("LPAUG") autoriza la revisión judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[26] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los

---

[25] Ley Núm. 38 de 30 de junio de 2017, según enmendada.
[26] *Hernández Feliciano v. Mun. de Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[27] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[28]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[29] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[30] La intervención del tribunal se limita a

---

[27] *Rolón Martínez v. Supte. Policía, supra*; *Batista, Nobbe* v. *Jta. Directores*, 185 DPR 206, 215 (2012).
[28] *Super Asphalt v. AFI y otro, supra*, pág. 819.
[29] *OEG v. Martínez Giraud, supra*; *Super Asphalt v. AFI y otro, supra*, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde, supra*, pág. 127.
[30] *OEG v. Martínez Giraud, supra.*

tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[31] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[32] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[33]

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[34] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[35] Ahora bien, nuestro más alto foro ha establecido que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó

---

[31] *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, *supra*, pág. 217.
[32] *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36.
[33] *Íd.; OEG v. Martínez Giraud*, *supra*; *Super Asphalt v. AFI y otro*, *supra*.
[34] *Véase* Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, *supra*, pág. 36; *Torres Rivera v. Policía de PR*, *supra*, pág. 627.
[35] *Torres Rivera v. Policía de PR, supra,* pág. 627.

arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[36]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[37]

## B. Debido Proceso de Ley

La Sección 7 del Artículo II de la Constitución de Puerto Rico le asegura a todo ciudadano que no será privado de su propiedad o libertad, sin un debido proceso de ley.[38] Esta garantía proviene de las Enmiendas V y XIV de la Constitución de los Estados Unidos de América. La cláusula del debido proceso de ley en la jurisdicción federal tiene como fin evitar que el Gobierno utilice sus poderes como un instrumento de subyugación.[39] También se implantó para impedir que dichas facultades sean manejadas de manera arbitraria e irrazonable.[40] Existen dos dimensiones de este principio cardinal: (1) la sustantiva y (2) la procesal.[41]

---

[36] *Íd.,* págs. 627-628; *OEG v. Martínez Giraud*, *supra*, pág. 90.
[37] *OEG v. Martínez Giraud*, *supra*, pág. 91.
[38] 1 LPRA Art. II, Sec. 7.
[39] *Davidson v. Cannon*, 474 US 344, 348 (1986).
[40] *Daniels v. Williams*, 474 US 327, 331 (1986).
[41] *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562, 575 (1992).

Tanto en la jurisdicción local como en la federal, la vertiente sustantiva del debido proceso de ley se enfoca en proteger los derechos fundamentales de los individuos.[42] Apoyado en lo anterior, se ha recalcado que el Estado no puede interferir con los intereses propietarios y libertarios de un individuo de manera irracional, injustificada o caprichosa. En su aspecto procesal, esta disposición le atribuye el deber al Estado de garantizarle a toda persona que en aquellas instancias en las que se pretenda intervenir con la libertad o propiedad de esta última, el proceso sea uno justo, equitativo e imparcial.[43]

Para que surta efecto la protección que brinda este derecho constitucional en su ámbito procesal, tiene que estar en peligro un interés individual ya sea libertario o propietario. El Tribunal Supremo de Puerto Rico señaló que, una vez cumplido este requisito, corresponde determinar cuál es el procedimiento exigido (*"what process is due"*)[44]. Dependiendo del contexto, *"diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental sea justo e imparcial."*[45]

En armonía con lo anterior, en *Mathews v. Eldridge*, 424 US 319 (1976), el Tribunal Supremo de los Estados Unidos estableció los criterios que deben ser examinados a la hora de determinar el procedimiento adecuado para privarle a una persona de algún derecho de propiedad o libertad. Estos son los siguientes: *"(1)*

---

[42] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 81 (1983).
[43] *López Vives v. Policía de P.R.*, 118 DPR 219, 231 (1987).
[44] *Rodríguez Rodríguez v. E.L.A.*, *supra*, pág. 578.
[45] *Íd.*

*los intereses individuales afectados por la acción del gobierno; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas; y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos.*"[46]

Desde esta perspectiva, el debido proceso de ley exige que en todo procedimiento adversativo se cumplan ciertas formalidades, a saber: (1) la notificación adecuada de la reclamación instada; (2) que el proceso se lleve a cabo ante un juzgador imparcial; (3) **la oportunidad de ser oído**; (4) **el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra**; (5) estar asistido por un abogado, y (6) que la decisión sea basada en el expediente.[47] Ahora bien, aun cuando esta norma constitucional está cimentada en la protección de los derechos fundamentales que ostenta toda persona en nuestra jurisdicción, su aplicación responde a consideraciones prácticas y circunstanciales.[48] De ahí que se disponga que el derecho a ser oído debe ser en un tiempo significativo y de una manera apropiada.[49]

**C. Permiso Único**

La *Ley para la Reforma del Proceso de Permisos de Puerto Rico*[50] ("Ley 161-2009") fue aprobada a los fines de establecer el marco legal y administrativo que rigen los procesos de solicitud, evaluación, concesión

---

[46] *Rivera Rodríguez & Co. v. Lee Stowell*, etc. 133 DPR 881, 888 (1993).
[47] *Íd.*, pág. 889. Énfasis suplido.
[48] *Domínguez Talavera v. Tribunal Superior*, 102 DPR 423, 428 (1974).
[49] *Mathews v. Eldridge*, *supra*, pág. 333.
[50] Ley Núm. 161 de 1 de diciembre de 2009, según enmendada.

y denegación de permisos por el Gobierno de Puerto Rico[51]. A través de dicha legislación fue creada la Oficina de Gerencia de Permisos, organismo gubernamental adscrito a la Junta de Planificación, con el propósito de emitir determinaciones finales y permisos relacionados con el desarrollo y el uso de terrenos, así como de las consultas de ubicación que incidan de alguna manera en la operación de un negocio en Puerto Rico[52]. El Artículo 9.6 de la referida legislación dispone que los Permisos bajo la Ley 161-2009 son de naturaleza *in rem*. Además, señala que: "*[e]n ningún caso se requerirá la expedición de un nuevo permiso, siempre y cuando el uso autorizado, permitido o no conforme legal [sic], continúe siendo de la misma naturaleza y **no sea interrumpido por un período mayor de dos (2) años***"[53].

Ahora bien, el Reglamento Conjunto particularmente la Sección 3.7.1.1, establece las disposiciones generales del Permiso Único. A esos efectos, el Reglamento Conjunto establece lo siguiente:

    a. El Permiso Único consolida e incorpora trámites en una sola solicitud, para simplificar los procedimientos y reducir el tiempo de evaluación y adjudicación de las solicitudes requeridas para iniciar o continuar la operación de un negocio.

    b. Todo edificio nuevo o existente, con usos no residenciales, obtendrá el Permiso Único para iniciar o continuar sus operaciones, el cual incluirá:
    1. Usos
    2. Certificación de Exclusión Categórica o documento ambiental aplicable;

---

[51] Exposición de Motivos de la Ley Núm. 161 de 1 de diciembre de 2009, según enmendada; *Horizon v. Jta. Revisora, RA Holdings*, 191 DPR 228, 236 (2014).
[52] Exposición de Motivos de la Ley Núm. 161-2009, *supra*.
[53] Artículo 9.6 de la Ley Núm. 161-2009, *supra*.

3. Certificación para la Prevención de Incendios;

4. Licencias Sanitarias; y

5. Cualquier otro tipo de licencia o autorización aplicable requerida para la operación de la actividad o uso del negocio según dispuesto en este Reglamento.

c. El Permiso Único, incluyendo las certificaciones y licencias necesarias para la apertura y operación del negocio o de la actividad, será expedido por la OGPe, los Municipio Autónomos con Jerarquía de la I a la III, y los PA.

[…]

f. El Permiso Único podrá ser emitido cuando el uso sea ministerial o se haya autorizado previamente una variación en el uso.

1. La solicitud deberá haber cumplido con todos los requisitos y documentos según establecidos en este Reglamento.

2. Incluyendo, los aplicables a las respectivas licencias, independientemente de haberse completado o no una inspección a la instalación.

g. Las certificaciones y licencias expedidas estarán sujetas a la inspección y fiscalización de las entidades gubernamentales con jurisdicción sobre las mismas[54].

Por su parte, el citado Reglamento Conjunto establece el procedimiento a seguir al momento de la renovación de un Permiso Único. A tales efectos, la Sección 3.7.1.4 dispone lo siguiente:

a. La renovación del Permiso Único será para las certificaciones y licencias contenidas en el mismo, eximiéndose de la renovación los usos y la determinación de cumplimiento ambiental, a menos que se añadan nuevos usos.

b. El SUI podrá emitir una notificación de advertencia por correo electrónico que sirva solamente para propósitos de orientar y como recordatorio a los solicitantes originales

---

[54] Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, Reglamento Núm. 9473, Departamento de Estado, 16 de junio de 2023, págs. 195-196.

que la fecha de expiración de un Permiso Único se acerca y que es prudente comenzar los trámites de su renovación.

1. […]

c. La parte proponente debe presentar la solicitud de renovación para su evaluación y adjudicación no menos de cuarenta y cinco (45) días antes de la fecha de expiración del Permiso Único. De no solicitar la renovación el mismo perderá vigencia a la fecha establecida.

d. Cuando se presente la solicitud de renovación antes de la expiración del Permiso Único, pero con menos de cuarenta y cinco (45) días previo a su expiración, se podrá requerir un pago adicional.

e. Se entenderá vigente todo Permiso Único cuya renovación se haya solicitado antes de su expiración hasta que se emita la determinación final sobre la solicitud de renovación.

f. Cuando se presente la solicitud de renovación después de la expiración del Permiso único, se tendrá que pagar un cargo adicional que será determinado por el Secretario Auxiliar de la OGPe mediante Orden Administrativa. La renovación solo podrá ser tramitada siempre y cuando no hayan transcurrido más de dos (2) años de la expiración del Permiso Único.

g. **De haber transcurrido más de dos (2) años desde la expiración del Permiso Único, se deberá solicitar un nuevo permiso.**

h. La solicitud de renovación se deberá presentar en el SUI utilizando el mismo número de caso del permiso, el cual será el mismo durante todas las renovaciones de dicho Permiso Único.

i. La renovación de un Permiso Único no conlleva una nueva evaluación del uso ya autorizado.

j. La renovación de un Permiso Único, no requerirá una inspección previa, no obstante, se deberá inspeccionar por la entidad gubernamental concernida con jurisdicción para verificar que las licencias y certificaciones estén conforme con lo autorizado en el Permiso Único.

k. **Los requisitos para la renovación del Permiso Único serán:**

1. Completar la solicitud de renovación en el SUI y pagar cargos y derechos aplicables.

2. Certificación por parte del dueño u operador que el uso está conforme al Permiso Único.

3. De no estar conforme, deberá proceder según establecido en esta Sección.

4. Cualquier otro requisito establecido en el Tomo de Licencias y Certificaciones, incluyendo los requisitos establecidos en la renovación de **las licencias sanitarias, prevención de incendios** y cualquier otra licencia o certificaciones aplicables para la operación del negocio cuya renovación se está solicitando.

5. No se solicitarán requisitos adicionales a los establecidos en esta Sección.

l. Si durante la inspección realizada se identifican usos o actividades que no están conforme al Permiso Único, Licencias o Certificaciones, pero las mismas están permitidas ministerialmente en el distrito de calificación en el que ubica la propiedad, en términos de uso y parámetros, se deberá solicitar una enmienda al Permiso Único para añadir la actividad o el uso no autorizado.

    1. […]

m. La renovación del Permiso Único no es revisable ni apelable excepto que se autorice alguna enmienda al uso.

n. Para las enmiendas al uso, solo se podrá solicitar revisión a la acción o actividad contemplada en la enmienda[55].

-III-

En el primer error que plantean los Recurrentes, estos alegan que falló la División de Revisiones Administrativas de la OGPe al determinar que el Permiso Único 2021 fue renovado y que, por lo tanto, la solicitud del Permiso Único 2025 fue una renovación y no una nueva solicitud de permiso. Veamos.

---

[55] Reglamento Conjunto para la Evaluación y Expedición de Permisos Relacionados al Desarrollo, Uso de Terrenos y Operación de Negocios, *supra*, págs. 197-199. Énfasis suplido.

Según surge del Informe de Investigación presentado por la Junta, el Proponente radicó su solicitud de renovación el 25 de mayo de 2022. Sin embargo, a fin de completar el proceso, el Proponente debía cumplir con la presentación del certificado de Prevención de Incendios y la Licencia Sanitaria, sin embargo, él mismo admitió que no lo hizo. Por tal razón, nunca se finalizó el proceso de renovación y la solicitud fue archivada en el sistema *Single Business Portal* ("SBP").

Transcurridos más de 2 años, el 10 febrero de 2025, el Proponente presentó una solicitud de renovación de Permiso Único 2025. En la Resolución recurrida, el Juez Administrativo señala que la renovación presentada por el Proponente fue aprobada y, por lo tanto, no es revisable. No le asiste la razón. De los autos del caso se desprende que el Permiso Único 2021 nunca entró en vigor debido a la falta de documentación. Siendo así, el trámite correspondiente era presentar una nueva solicitud de permiso, tal y como dispone el Reglamento Conjunto. Cabe señalar que la OGPe no tiene autoridad para emitir un Permiso Único si el proponente no cumple con el procedimiento establecido para ello. A tenor con lo anterior, concluimos que se cometió el primer error.

Ahora bien, pasemos a evaluar el cuarto error planteado por los Recurrente y los efectos de una nueva solicitud de Permiso Único. A través de un Permiso Único se autoriza a que el proponente comience o continúe la operación de un negocio. El caso de autos trata de una funeraria que colinda con la propiedad de

los Recurrentes quienes alegan haberse visto afectados por las operaciones del negocio. Ante tal situación, los Recurrentes presentaron una solicitud de intervención a fin de ser parte del procedimiento adjudicativo. Ahora bien, a pesar de que la solicitud fue declarada con lugar, la Agencia no le concedió a los Recurrentes la oportunidad de ser oídos y de presentar prueba. Tal actuación infringe las garantías mínimas que nuestro sistema jurídico le reconoce a toda parte en un procedimiento adjudicativo ante una agencia. Ante tal escenario, concluimos que erró la Oficina de Gerencia de Permisos al emitir una determinación sin haberle dado la oportunidad a los Recurrentes de presentar prueba que sostenga sus alegaciones. Por ende, se cometió el cuarto error planteado por los Recurrentes.

Por no ser necesario para la disposición del caso de autos, este Tribunal no entrará a discutir el segundo, tercer y quinto error.

-IV-

Por los fundamentos que anteceden se *revoca* el dictamen emitido por la División de Revisiones Administrativas adscrita a la Oficina de Gerencia de Permisos y se *devuelve* el caso para la celebración de una vista pública de conformidad con lo expresado por este Tribunal.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones